IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID DELEON,

    Petitioner,

vs.

DERRAL ADAMS, Warden,

    Respondent.

No. C 06-3384 WHA (PR)

**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a habeas corpus case filed by a state prisoner challenging the validity of his state court conviction pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons discussed below, the petition is **DENIED**.

## STATEMENT

A Contra Costa County jury convicted petitioner of assault with intent to commit rape, false imprisonment by violence, and attempted sexual battery by restraint. *See* Cal. Penal Code 220; 236, 237; 243.4(a), 664. The trial court found that petitioner had sustained three prior strike allegations, three prior prison term allegations, and three prior serious felony allegations. The court struck two of the strikes and three of the prior prison terms and sentenced petitioner to a term of twenty-nine years in state prison.

The following facts are taken from the opinion of the California Court of Appeal.

**Background**

On the morning of April 14, 2002, the 24-year-old victim, Jane Doe, was at work as a registration clerk at the Contra Costa County Regional Medical Center (hospital) in Martinez. She was five feet tall and weighed 150 pounds. Sometime that morning, Jane Doe entered the women's restroom, went into one of the stalls and locked the stall door. She noticed shoes inside the stall next to her. She then lifted up her skirt so that she could use the toilet. Jane Doe was not wearing nylons or underwear. While seated on the toilet she again noticed what appeared to be men's shoes in the next stall, and believed they belonged to one of the homeless people that frequented the hospital. While urinating, Jane Doe noticed dust balls falling down in front of her. When she looked up she saw a man, later identified as defendant, smiling and looking at her over the wall dividing the two stalls. Startled and frightened, Jane Doe asked defendant what he was doing there, said it was the women's bathroom and told him to get out. In response, defendant smiled, told her it was the men's room and that she should leave.

Jane Doe then got up, began to pull down her skirt, and unlocked and started to open the stall door. When her skirt was halfway down defendant jumped over the stall wall into her stall. He landed in front of the door causing it to close, and locked it. Defendant, standing 6 feet 1 inch tall and weighing 180 pounds, came toward her and blocked her ability to leave the stall. Jane Doe put her hands up to keep him away from her. When she tried to get to the stall door's lock, defendant pushed her arm away and put his weight against the door. Jane Doe noticed the odor of alcohol on defendant's breath. Because she thought defendant wanted to hurt her, she told him, "if you do this my husband will kill you." At some point, defendant reached his hand under Jane Doe's skirt close to her vaginal area, touching her upper thigh. She pushed his hand away while holding his other arm to keep him away from her. At some point during the struggle she scratched him on his upper arm to keep his arm away. She noticed that defendant's pants were unbuttoned and partially unzipped, and his belt was undone. When Jane Doe loudly yelled the name of the housekeeper working on that floor, defendant let go and backed off, and Jane Doe was able to unlock the stall door, push it open and run out of the bathroom. She looked back and saw defendant run out of the bathroom and toward the main lobby.

Martinez Police Officer Glenn Walkup received a radio call regarding a sexual assault at the hospital. Thereafter, he found defendant lying in a crawl space underneath a house located one-half block from the hospital. When Officer Walkup arrested defendant, he noticed that defendant's pants were unbuttoned. Defendant did not appear to be intoxicated. Walkup later noticed that defendant had four small, recently caused, scratches on his right bicep. Jane Doe made an in-field identification of defendant as her assailant.

The parties stipulated that defendant's blood alcohol level approximately three hours after the assault was .032 percent in the first sample and .03 percent in the second sample. Sheriff's department criminalist Gary Davis testified that if a person's blood alcohol level was .03 percent, it would have been .09 percent three hours earlier.

**The Defense**

Defendant testified that the day prior to the assault, he argued with his niece and decided to drive to San Francisco. In the course of the day, he consumed 4 six-packs of beer, became intoxicated, got lost and stopped at the hospital to use the restroom. He was "drunk" while in the restroom stall. When

2

> defendant noticed that the person who entered the stall next to him had painted toenails and sandals, he was "curious," and quickly pulled up and buttoned his pants and looked over the wall dividing the two stalls. Jane Doe smiled after telling defendant that he was in the women's room. Defendant interpreted Jane Doe's hand motions and comments as inviting him into her stall, so he jumped over the wall into her stall. After Jane Doe mentioned her husband, defendant turned to leave the stall and Jane Doe put her arms around his waist and pushed him against the stall wall. As she pushed him she scratched his arm. She then let go of him and left the stall. Defendant denied struggling with Jane Doe, and denied intending to rape her or touch her in a sexual manner.

*People v. Deleon*, A104998, 2005 Cal. App. Unpub. LEXIS 7353, at *2-6 (2005).

## ANALYSIS

**A.   HABEAS CORPUS STANDARD OF REVIEW**

There are only two grounds upon which a federal district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court. 28 U.S.C. 2254(d). Those grounds are that the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Thus, the federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at

3

411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000). Where the state court gives no reasoned explanation of its decision *and* there is no reasoned lower court decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law.  *Plascencia v. Alameida* , 467 F.3d 1190, 1197-98 (9th Cir. 2006).  A federal court "must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law." Fisher v. Roe, 263 F.3d 906, 914 (9th Cir. 2001).

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner contends that (1) there was insufficient evidence to support his conviction of assault with intent to commit rape, (2) there was insufficient evidence to support his conviction of false imprisonment by violence,(3) there was insufficient evidence to convict him of sexual battery by restraint, and (4) he was deprived of the opportunity to ask the magistrate to reduce the charges to misdemeanors under California Penal Code section 17.

**1.    Sufficiency of the Evidence**

**a.    Standard of Review**

"The Due Process Clause of the Constitution protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  Consequently, a state prisoner states a constitutional due process claim when he alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 321 (1979).  A federal court collaterally reviewing a state court conviction may determine "only whether, 'after

4

1  viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
2  could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 319.
3  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may
4  the writ be granted. *Id.* at 324.

5  Petitioner asks the court to review the sufficiency of the evidence under a standard
6  outlined in California Penal Code section 1181(6) which allows a state court to grant a new trial
7  or modify a verdict when that verdict was made contrary to law or evidence. Cal. Penal Code
8  1181(6). State law does not govern the analysis of a federal habeas petition. *Estelle v.*
9  *McGuire*, 502 U.S. 62, 67-68 (1991).

### b. Sufficiency of the Evidence of Assault with Intent to Rape

Petitioner contends that there was insufficient evidence that he assaulted Jane Doe with intent to rape. The court of appeal addressed this claim as follows:

> Next, defendant contends the court committed error in denying his motion for new trial on the ground that his conviction of assault with intent to commit rape was not supported by substantial evidence. (§ 1181, subd. (6).) He concedes that there was substantial evidence suggesting he had "a lewd intent or an intent to seduce," but argues there was no evidence that he intended to commit forcible rape or sexual penetration.
>
> In reviewing a criminal conviction for substantial evidence we review the whole record in a light most favorable to the judgment to determine whether it discloses evidence which is reasonable, credible and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Slaughter* (2002) 27 Cal. 4th 1187, 1203; *People v. Cuevas* (1995) 12 Cal. 4th 252, 260-261.) We are not permitted to reweigh the evidence, reappraise the credibility of witnesses or resolve factual conflicts, as these are functions reserved for the trier of fact. (*People v. Craig* (1994) 25 Cal.App.4th 1593, 1597.)
>
> The crime of assault with intent to commit rape requires proof that the assailant intended to have sexual intercourse with the victim and to use force to overcome the victim's resistance. (*People v Craig, supra,* 25 Cal.App.4th at p. 1597.) "Assault with intent to commit forcible rape requires an intent to and an unlawful attempt to have sexual intercourse by force, violence or fear of bodily injury, without consent of the victim. [Citations.] The only intent required for the crime of rape itself is the intent to do the proscribed act. [Citations.]" (*People v. Dixon* (1999) 75 Cal.App.4th 935, 942-943.) Whether the requisite intent existed may be determined from the defendant's conduct and the surrounding circumstances. (*People v. Bradley* (1993) 15 Cal.App.4th 1144, 1154.)
>
> Defendant relies primarily on *People v. Greene* (1973) 34 Cal.App.3d 622 and *People v. Puckett* (1975) 44 Cal.App.3d 607 in support of his claim that the evidence is insufficient to establish his intent to commit rape. In *Greene,* the

5

defendant approached the victim, put his arm around her waist, directed her to put her arm around his waist and moved his hand up and down her waistline. He told her he had a gun and said, "I just want to play with you." The victim then broke free from his embrace without a struggle and fled. (*Greene*, at p. 650.) The *Greene* court concluded this evidence did not establish that the defendant assaulted the victim with an intent to commit rape. (*Id.* at p. 651.) In *Puckett,* the defendant drove behind the victim's car flashing his headlights and followed her to her home. When she reached home, she ran into the house and the defendant ran after her trying to keep her from closing the door. When the victim's mother came to her aid, the defendant fled. (*Puckett,* at p. 610.) The *Puckett* court found the evidence insufficient to establish an intent to commit rape. (*Id.* at p. 614.)

In *People v. Craig, supra,* 25 Cal.App.4th at p. 1604, the Court of Appeal found the evidence did establish the requisite intent to commit rape. In that case, the defendant followed the victim as she drove home, and when she pulled into her driveway, he approached her and apologized for mistaking her for someone else. After she got out of her car, he confronted her, grabbed her hair, pushed her back into the driver's seat and shoved his hand inside her sweater, touching her breasts outside her bra. The assault ended when the victim's roommate came to her aid. (*Id.* at pp. 1595-1596.) The *Craig* court distinguished *Greene* because the defendant's (Greene's) remarks and conduct were consistent with an assault that was not intended to lead to a rape. (*Craig,* at p. 1600.) In contrast the *Craig* court noted that the defendant (Craig) "made no statements suggesting that his intent was to commit rape or that it was not." (*Id.* at p. 1599.) In addition, the *Craig* court found the physical act evidence stronger than in *Greene.* (*Craig,* at p. 1600.) The *Craig* court concluded that the totality of the circumstances established assault with the specific intent to commit rape. "All of [the defendant's] conduct was consistent with that intent. Nothing he did or said indicated that he intended only to place his hands on her body or to accomplish some sexual act short of or different from intercourse. While other reasonable inferences also might be drawn, it was for the jury, not us, to draw them." (*Id.* at p. 1604.)

We conclude that the evidence in this case reasonably supports an inference of intent to rape because his conduct was consistent with that intent. After watching the victim as she used the toilet inside a bathroom stall, defendant jumped into the stall, locked the stall door and positioned himself to block the victim's exit. He then reached his hand in an upward motion under the victim's skirt close to her vagina and touched her upper thigh. The victim kept defendant from touching her vaginal area by pushing his arm down and away. She was also grabbing his other arm to keep him away from her. Defendant's pants were unbuttoned and slightly unzipped and his belt was undone. The victim struggled with defendant and he backed off and fled only after she yelled the name of a fellow hospital employee. In addition, "[n]othing he did or said indicated that he intended only to place his hands on her body or to accomplish some sexual act short of or different from intercourse." (*People v. Craig, supra,* 25 Cal.App.4th at p. 1604.) Given these circumstances the jury could reasonably conclude that defendant intended to rape the victim. The motion for new trial was properly denied.

*Deleon*, 2005 Cal. App. Unpub. LEXIS 7353 at *14-19.

The jury could reasonably find that petitioner applied force, and that he had the ability to do so, based on the victim's testimony that petitioner pushed her arm and pushed his hand up

6

underneath her skirt. Petitioner argues that his intoxication precluded his being aware that physical force would result from his actions. The victim testified, however, that petitioner had the ability to jump over a wall, engage in a physical struggle with the victim, lock the stall door, and generally control his body's movements. Based on that testimony, a reasonable juror could conclude that he was aware that physical force would result from his actions despite the alcohol he had consumed.

Finally, the jury could infer that petitioner had the specific intent to commit rape from the victim's testimony that petitioner watched her as she used the toilet, locked the stall door, and, despite her protestations, pushed her and reached under her skirt, all while his pants were unbuttoned and unzipped. *People v. Bradley*, 15 Cal. App. 4th 1144, 1154 (1993) (California courts allow an inference of specific intent to commit rape from the defendant's conduct and the circumstances of the event).

Petitioner contends that the victim's testimony is not credible, that she consented to his coming into the stall and to their touching, that his pants were buttoned, and that he touched her thigh only because of the confines of the stall. If a federal court is confronted by a record that supports conflicting inferences, it must presume "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Here the jury presumably rejected petitioner's version of the incident in favor of the victim's, and there is no basis for finding that the jury could not reasonably find the victim to be credible.

Petitioner also argues that the jury's determination that he intended to rape the victim was unreasonable because a hospital bathroom stall in the middle of the morning is an unlikely place for a sexual encounter. While that may or may not be true of a sexual *encounter*, the jury could reasonably conclude that a sexual assault occurred during the daytime in a bathroom.

Because a jury could have reasonably found every element of assault with intent to commit rape to be true beyond a reasonable doubt, the state court's finding that there was sufficient evidence was neither contrary to nor an unreasonable application of federal law.

7

  **c.**  **Sufficiency of the Evidence of False Imprisonment by Violence**

Petitioner also contends that there was insufficient evidence that he falsely imprisoned Jane Doe by use of violence. The court of appeal addressed this claim as follows:

> Finally, defendant contends the court erred in denying his motion for new trial on the ground that his conviction of false imprisonment was not supported by substantial evidence. (§ 1181, subd. (6).) In particular, he contends the evidence did not establish that he used violence or menace to falsely imprison Jane Doe.
>
> Section 236 defines false imprisonment as "the unlawful violation of the personal liberty of another." " ' "Personal liberty" ' is violated when 'the victim is "compelled to remain where he [or she] does not wish to remain, or to go where he [or she] does not wish to go." ' [Citations.]" (*People v. Reed* (2000) 78 Cal.App.4th 274, 280.) False imprisonment requires nothing more than the force necessary to restrain the victim of his or her liberty, and may be accomplished by words or acts which the victim is afraid to disregard. (*People v. Babich* (1993) 14 Cal.App.4th 801, 806.) The offense is designated a felony when it is "effected by violence, menace, fraud, or deceit." (§ 237, subd. (a); *Reed,* at p. 280.) " ' "Violence" ... means " 'the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint.' " ' [Citations.] 'Menace' is defined as ' " 'a threat of harm express or implied by word or act.' " ' [Citation.]" (*Reed,* at p. 280.)
>
> Defendant relies primarily on *People v. Matian* (1995) 35 Cal.App.4th 480, which concluded that the evidence was insufficient to support a felony conviction for false imprisonment after a sexual assault. In that case, the defendant sexually assaulted the victim during which he squeezed her breast hard enough to cause pain and possibly bruising. Thereafter, as she prepared to go, the defendant grabbed her arm and yelled at her not to go, and that " 'nothing happened,' " and told her to go wash her face. She then sat down in a chair and each time she got up, he glared at her and got up from his chair to approach her. The victim testified she was afraid and sat back down because she did not want him to touch her again. The prosecutor conceded the evidence was insufficient to establish false imprisonment effectuated by violence, and the sole issue on appeal was whether the evidence established false imprisonment effectuated by menace. (*Id.* at p. 485.) The *Matian* court found the evidence insufficient to establish this charge and reduced the defendant's conviction to misdemeanor false imprisonment. (*Id.* at ¶. 486-488.)
>
> We conclude that *Matian* is distinguishable and that the evidence in this case is sufficient to establish false imprisonment effectuated by violence. Defendant accomplished the restraint of Jane Doe by locking the stall door. Thereafter, when she tried to get to the lock, defendant used additional force to push her arm away and put his weight against the door. We conclude this established physical force over and above the force necessary to effect the restraint. The motion for new trial challenging the sufficiency of the evidence was properly denied.

*Deleon*, 2005 Cal. App. Unpub. LEXIS 7353 at *19-21.

From the evidence that petitioner locked the door to the bathroom stall, the jury could

1  have reasonably concluded that petitioner intentionally confined and detained the victim.  The
2  victim also testified that she blocked petitioner with her hands, tried to reach for the lock, and
3  told petitioner, "If you do this, my husband will kill you."  The jury could have reasonably
4  concluded from this testimony that the victim did not consent to the confinement.

Petitioner argues that there was not sufficient evidence of force because he did not use a weapon.  However, California law does not require a weapon, but only the use of physical force over and above the force necessary for the restraint.  *People v. Reed*, 78 Cal. App.4th 274, 280 (2000).  Here, the force necessary to effectuate the confinement was completed with the locking of the door.  There was evidence that petitioner also pushed the victim's arm away from the lock as she tried to reach for it.  Thus, when petitioner also pushed the victim's arm, he was applying physical force over and above the locking of the door.

Because a jury could have reasonably found every element of false imprisonment by use of violence to be true beyond a reasonable doubt, the state court's finding that there was sufficient evidence was neither contrary to nor an unreasonable application of federal law.

**d.     Sufficiency of the Evidence of Attempted Sexual Battery by Restraint**

Finally, petitioner contends that there was insufficient evidence that he attempted sexual battery against Jane Doe by use of restraint.[1]  Under California law, sexual battery by restraint requires that (1) a person touched an intimate part of the victim, (2) the touching was against the will of the victim, (3) the touching was done with the specific intent to cause sexual arousal, or abuse; and (4) the touching occurred while the victim was unlawfully restrained by the accused or an accomplice.  *See* Cal. Penal Code 243.4, 664; The Committee on Standard Jury Instructions, Criminal, *California Jury Instructions - Criminal* 10.37 (West 2005) ("CalJic").  An attempt occurred if petitioner (1) took a direct but ineffectual act toward committing the sexual battery and (2) intended to commit sexual battery.  *See* Cal. Penal Code 21a; Judicial Council of California, *Judicial Council of California Criminal Jury Instructions* 460 (Matthew Bender & Co., Inc.  2009).  An "intimate part" of the victim for purposes of Penal Code section

---

[1] There is no explained state court decision for this claim, and thus an independent review of the record is necessary.  (*See Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Circ. 2006).

1  243.4 is a "sexual organ, anus, groin, or buttocks of any person." *CalJic* 10.37.

2  At trial, the jury heard evidence that petitioner attempted to pull up the victim's skirt while it was already pushed up around her upper thigh, and that he pushed his hand up her skirt, touching her upper thigh near her vagina. The jury also heard that the victim pushed petitioner's arm away after he began reaching up her skirt. Based on this evidence, the jury could have reasonably concluded that petitioner was trying to touch the victim's vagina and that he failed only because the victim pushed his hand away. The jury could have reasonably found that the touching was against the will of the victim based on the fact that the victim pushed petitioner's hand away in addition to the other evidence that she tried to escape and threatened petitioner in an attempt to make him stop. The specific intent to cause sexual arousal can be inferred from the evidence that petitioner watched the victim as she used the toilet, jumped into her stall, reached his hand under her skirt near her vagina, and touched her upper thigh, all while his pants were unbuttoned and unzipped and his belt was undone. Finally, as with the false imprisonment charge discussed above, the jury could have reasonably determined that petitioner restrained the victim by locking the stall and blocking her exit.

Again, petitioner argues there was insufficient evidence based on his account of the incident, which differs from that to the victim. According to him, the victim invited him into her stall and embraced him, the touching was incidental, and the victim was free to leave at any time. However, the jury chose to believe the victim's account. Petitioner offers no reason, and none are apparent from the record, why the jury could not reasonably find the victim's testimony credible. This credibility determination will not be disturbed on federal habeas review. *See Terhune*, 376 F.3d at 957 (jury's credibility determinations are entitled to near-total deference).

Because a jury could have reasonably found every element of sexual battery by restraint to be true beyond a reasonable doubt, the state court's finding that there was sufficient evidence was neither contrary to nor an unreasonable application of federal law.

### 2.    State Law Violation

Petitioner also argues that the prosecutor added the sexual battery and false

1  imprisonment charges after his arraignment, thus depriving him of the opportunity to ask the

2  magistrate to reduce the charges to misdemeanors under California Penal Code section 17. *See*

3  Cal. Penal Code 17. However, a federal court can only grant habeas relief based on a violation

4  of federal law, not a violation of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);

5  28 U.S.C. 2254(a). Here, petitioner has alleged a violation of a state law that does not implicate

6  the Constitution. Thus, this court cannot grant relief on this claim.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September __17__, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\DELEON3384.RUL.wpd